# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL WAYNE SKINNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0179-JHP-JFJ** |
| | ) | |
| **HEATH WINFREY,** | ) | |
| **ROBIN LIVINGSTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff Michael Wayne Skinner, a state inmate appearing *pro se* and proceeding *in forma pauperis*. Skinner claims Defendants Heath Winfrey and Robin Livingston violated his constitutional right to adequate medical care by failing to timely schedule an operation to repair a fracture in his left arm while he was incarcerated at the Craig County Jail in Vinita, Oklahoma. Before the Court are two motions: Defendants' motion for summary judgment (Dkt. 41) and Defendants' motion for discovery sanctions (Dkt. 42). Skinner did not respond to either motion. For the reasons discussed below, the Court finds Skinner has not demonstrated a constitutional violation and thus cannot overcome Defendants' assertion of qualified immunity. The Court therefore grants Defendants' motion for summary judgment. The Court finds, however, that the circumstances of this case do not support Defendants' request for discovery sanctions and thus denies their motion for sanctions.

## *BACKGROUND*

Skinner is currently incarcerated at the Mack Alford Correctional Center (MACC) in Stringtown, Oklahoma. However, when he commenced this action in April 2018, Skinner was

incarcerated at the Craig County Jail (CCJ) in Vinita, Oklahoma. Dkt. 1, *Complaint*, at 1;[1] Dkt. 41, *Motion for Summary Judgment*, at 13, ¶ 30. Winfrey is the Sheriff of Craig County, and Livingston is the CCJ's former Jail Administrator. Dkt. 41, *Motion for Summary Judgment*, at 7, ¶ 1. Skinner was incarcerated at the CCJ for two periods relevant to his claim: from January 2, 2017, until January 20, 2017, and from January 22, 2017, until May 22, 2018. *Id.* at 7-8, 13, ¶¶ 2, 3, 5, 30.

Several months before he was arrested and held at the CCJ, likely in mid-2016, Skinner was hit in the left arm with a baseball bat. Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 7. When Skinner was first booked into the CCJ on January 2, 2017, CCJ officials completed a medical assessment and found no visible signs of trauma or obvious pain requiring immediate treatment. Dkt. 41, *Motion for Summary Judgment*, at 7, ¶ 3; Dkt. 41-3, *Medical Questionnaire, dated January 2, 2017*, at 1. During the assessment, Skinner reported that he had no medical problems other than a possible MRSA infection. Dkt. 41-3, at 2. Skinner was released from the CCJ to the custody of Ottawa County on January 20, 2017. Dkt. 41, *Motion for Summary Judgment*, at 8, ¶ 4. While he was held at the Ottawa County Jail, Skinner did not complain to anyone about pain in his left arm. Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 10. When Skinner returned to the CCJ on January 22, 2017, CCJ officials completed a second medical assessment and found no visible signs of trauma or obvious pain requiring medical

---

[1] After Skinner filed his complaint, but before the Court conducted the preliminary screening required by 28 U.S.C. § 1915A, Skinner filed two supplemental pleadings (Dkts. 4, 7). The first supplemental pleading (Dkt. 4) consists of Skinner's medical records. The second supplemental pleading (Dkt. 7) reasserts allegations stated in the complaint. In this Opinion and Order, the Court will consider these pleadings as part of Skinner's complaint, but will refer to them, respectively, as Plaintiff's First Supplemental Pleading and Plaintiff's Second Supplemental Pleading. In addition, for consistency, the Court's record citations will refer to the CM/ECF page number found in the upper right-hand corner of each document.

treatment.  Dkt. 41, *Motion for Summary Judgment*, at 8, ¶¶ 5, 6; Dkt. 41-5, *Medical Questionnaire, dated January 22, 2017*, at 1.  During that assessment, Skinner reported that he had no medical problems other than a MRSA infection.  Dkt. 41-5, at 1-2.  He also reported that he had been either hospitalized or treated by a doctor five weeks prior for some unspecified condition.  *Id.* at 3.

On April 19, 2017, Skinner was involved in a fight with two inmates.  Dkt. 41, *Motion for Summary Judgment*, at 8, ¶ 7; Dkt. 41-6, *Craig County Jail Incident Report*, at 1.  He received a bite mark to his forehead and lacerations to his right elbow, left knee, and left foot.  Dkt. 41-6, at 1.  A nurse at the CCJ evaluated Skinner's injuries.  *Id.*  Based on the nurse's recommendation, Winfrey directed CCJ staff to transport Skinner to the emergency room for evaluation and treatment.  *Id.*  At the emergency room, Skinner's bite wound and abrasions were cleaned and treated and he was prescribed two medications.  Dkt. 41, *Motion for Summary Judgment*, at 8, ¶ 9.  At that time, Skinner did not complain of any pain in his left arm and no x-rays were ordered.  *Id.*; Dkt. 41-7, *St. Francis Medical Records*, at 1-16.  After Skinner returned to the CCJ from the emergency room, CCJ medical staff administered his prescriptions as directed.  Dkt. 41-9, *Medication Administration Record*, at 1.

On June 21, 2017, Skinner complained of pain in his left arm and requested a medical appointment.  Dkt. 41, *Motion for Summary Judgment*, at 8-9, ¶ 10; Dkt. 41-10, *Sick Call Request Form, dated June 21, 2017*, at 1.  Skinner stated he had been experiencing pain in his left arm "for about three weeks."  Dkt. 41-10, *Sick Call Request Form, dated June 21, 2017*, at 1.  Eight days later, on June 29, 2017, Sheriff's Deputy Frank Nellen transported Skinner to the Cherokee Nation Vinita Clinic.  Dkt. 1, *Complaint*, at 4; Dkt. 41, *Motion for Summary Judgment*, at 9, ¶ 12.  Kathryn Holloway, ARNP, examined Skinner.  Dkt. 41-11, *Office Clinic Notes, dated June 29, 2017*, at 1.  Skinner told Holloway he had been hit with a chair during an altercation that occurred six months

before his clinic visit and that he did not receive x-rays at that time. *Id.*; *see also* Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 6. Holloway ordered x-rays of Skinner's left arm and diagnosed him with "a non-union fracture of [his] left forearm."[2] Dkt. 41, *Motion for Summary Judgment*, at 9, ¶ 12; *see also* Dkt. 1, *Complaint*, at 4; Dkt. 41-11, *Office Clinic Notes, dated June 29, 2017*, at 3-4; Dkt. 41-12, *Plaintiff's X-Rays*, at 1. Holloway placed a splint on Skinner's left forearm, prescribed two medications to treat pain and muscle spasms, and sent Skinner's x-rays to an orthopedic specialist for further evaluation. Dkt. 41, *Motion for Summary Judgment*, at 9, ¶ 12. When Skinner returned to the CCJ after his clinic visit, CCJ medical staff administered his medications as directed. *Id.*; *see* Dkt. 41-13, *Medication Administration Record*, at 1-7.

Skinner was transported from the CCJ to the Cherokee Nation Vinita Clinic on July 12, 2017, for a follow-up visit. Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 12; Dkt. 41, *Motion for Summary Judgment*, at 9, ¶ 13. During that visit, Skinner told Jeffrey Gastorf, D.O., that his left forearm "injury started about 8 months ago when he was hit by a baseball bat" and that he did not have his arm evaluated at the time of the injury. Dkt. 41-14, *Office Clinic Notes, dated July 12, 2017*, at 1. Skinner reported "persistent" pain and weakness in his left arm. *Id.* Dr. Gastorf replaced the cotton and bandage on Skinner's splint and noted the next step would be to refer Skinner for an orthopedic consultation. *Id.*

On July 14, 2017, the Cherokee Nation WW Hastings Indian Hospital ("Hospital"), in Tahlequah, Oklahoma, referred Skinner to The Orthopaedic Center ("Center"), in Tulsa, Oklahoma, for an orthopedic consultation. Dkt. 41, *Motion for Summary Judgment*, at 9, ¶ 14; Dkt. 41-15, *Letter from Center to Plaintiff, dated July 25, 2017*, at 1; Dkt. 41-16, *Referral for*

---

[2] A nonunion fracture refers to a "[f]ailure of normal healing of a fractured bone." *Nonunion*, STEDMAN'S MEDICAL DICTIONARY (2014).

*Contract Professional Services, dated July 14, 2017*, at 1. The referral form the Hospital sent to the Center indicates Skinner's left forearm fracture was, at that time, "6 to 8 month[s] old." Dkt. 41-16, at 1.

On August 9, 2017, Deputy Nellen transported Skinner from the CCJ to the Center for an orthopedic consultation. Dkt. 1, *Complaint*, at 4; Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 15. Brian Chalkin, D.O., confirmed that Skinner had a non-union left ulnar shaft fracture and recommended outpatient surgery. Dkt. 41-17, *Surgery Checklist*, at 1. Two days later, the Hospital approved Dr. Chalkin's request for a surgical referral. Dkt. 1, *Complaint*, at 9; Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 5; Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 16; Dkt. 41-18, *Referral, dated August 11, 2017*, at 1. On August 22, 2017, the Center sent Skinner a letter, addressed to his home address, acknowledging receipt of the Hospital's approval and requesting that Skinner contact the Center to schedule his surgery. Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 17; Dkt. 41-20, *Letter from Center to Plaintiff, dated August 22, 2017*, at 1.[3]

Sometime after August 22, 2017, Skinner's sister, Sherryl Herndon, "hand delivered" the "paperwork" approving Skinner's surgery to Livingston at the CCJ. Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1; Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 18; Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 15-16, 21. Three weeks after Herndon delivered the paperwork to Livingston, Skinner asked Tricia Fleming, a nurse at the CCJ's medical facility, "what's going on with my arm." Dkt. 41-1, at 21; *see also* Dkt. 1, *Complaint*, 3; Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1. Fleming told Skinner that the paperwork had been "found on a desk in the Sheriff's Department." Dkt. 1, *Complaint*, at 3; Dkt. 7, *Plaintiff's Second*

---

[3] Hospital staff attempted to call Skinner on August 11, 2017, to advise him of the surgical referral, but were unable to reach him at either telephone number the Hospital had on file. Dkt. 41-19, *Record of Correspondence*, at 1.

*Supplemental Pleading*, at 1. Although Fleming did not say which desk, Skinner assumed it was Livingston's. Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 21.

On October 16, 2017, Fleming spoke with Angela at the Center regarding Skinner's left arm injury. Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 3; Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 19. Angela advised Fleming that Skinner would need to obtain new referrals from the Hospital both (1) for another orthopedic consultation with the Center and (2) for any surgical procedure the Center may recommend. Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 3; Dkt. 41-21, *Craig County Medical Visit Log, dated October 27, 2017*, at 1. Angela referred Fleming to the Hospital's coordinator who was not in the office on that date, and Fleming indicated in her notes that she would call the coordinator a few days later. Dkt. 41-21, at 1.

Skinner submitted sick call request forms "to the nurse or jail administrator" on October 26, 2017, and October 27, 2017, asking when his operation would be scheduled and requesting an explanation for the delay. Dkt. 41, *Motion for Summary Judgment*, at 11, ¶¶ 20, 21; Dkt. 41-22, *Sick Call Request Form, dated October 26, 2017*, at 1-2; Dkt. 41-23, *Sick Call Request Form, dated October 27, 2017*, at 1-2. On October 31, 2017, Skinner was transported from the CCJ to the Center. Dkt. 41, *Motion for Summary Judgment*, at 11, ¶ 22. During that visit, the Center confirmed Skinner's diagnosis as a non-union fracture and noted that the Center was awaiting authorization from the Hospital to schedule Skinner's surgery. *Id.*; Dkt. 41-24, *Return to Work/School Form, dated October 31, 2017*, at 1.

On November 30, 2017, Skinner complained of pain in his left arm and requested pain medication. Dkt. 41, *Motion for Summary Judgment*, at 11, ¶ 23; Dkt. 41-25, *Sick Call Request Form, dated November 30, 2017*, at 1. The next day, December 1, 2017, Skinner submitted a Craig County request form to Livingston, asking why his operation had not been scheduled. Dkt. 41,

*Motion for Summary Judgment*, at 11, ¶ 24; Dkt. 41-26, *Craig County Request Form, dated December 1, 2017*, at 1-2. In response to the request submitted to Livingston, Fleming provided Skinner with ibuprofen. Dkt. 41-26, at 1. Fleming received Skinner's November 30 sick call request form on December 4, 2017, and again provided him with ibuprofen. Dkt. 41-25, at 1.

Skinner was transported from the CCJ to the Cherokee Nation Vinita Clinic on December 6, 2017, for further evaluation. Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 14; Dkt. 41, *Motion for Summary Judgment*, at 11, ¶ 25. Dr. Gastorf noted that Skinner "was previously seen by orthopedic clinic and was told that [his arm] needed repair but since patient was incarcerated patient needed to go through the jail system to get repair done." Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 14; Dkt. 41-27, *Office Clinic Notes, dated December 6, 2017*, at 1. Dr. Gastorf advised Skinner that the Cherokee Nation was no longer willing to pay for the operation given that Skinner was incarcerated and that Skinner would need to contact Livingston "to get the process started." Dkt. 41-27, at 1. Dr. Gastorf prescribed ibuprofen for Skinner's pain. *Id.* When Skinner returned to the CCJ, CCJ medical staff administered the ibuprofen as directed. Dkt. 41-28, *Medication Administration Record*, at 1.

Skinner submitted a sick call request form to Fleming on December 15, 2017, indicating the pain in his arm had increased, his lower forearm was "real sore," he was feeling pain in his left shoulder, and the pain medication would not "fix the problem." Dkt. 1, *Complaint*, at 12-13; Dkt. 41, *Motion for Summary Judgment*, at 12, ¶ 26; Dkt. 41-29, *Sick Call Request Form, dated December 15, 2017*, at 1. Fleming received the form on December 19, 2017, and scheduled Skinner for an appointment with Curtis Phillips, D.O. Dkt. 41-29, *Sick Call Request Form, dated December 15, 2017*, at 1; Dkt. 41-31, *Dr. Phillips' Office Notes, dated December 23, 2017*, at 1.

Skinner submitted a Craig County Request Form to Sheriff Winfrey on December 19, 2017.

Dkt. 41, *Motion for Summary Judgment*, at 12, ¶ 27; Dkt. 41-30, *Craig County Request Form, dated December 19, 2017*, at 1.  On the form, Skinner stated his pain was "getting worse" and he reminded Winfrey the x-rays taken in August and October had confirmed his arm was broken. Dkt. 41-30, at 1.  Skinner further indicated his understanding that Craig County "is liable" for the operation while he is incarcerated and asked Winfrey to explain the delay.  *Id.* at 1-2.  Winfrey responded to Skinner's request on December 28, 2017, as follows:

> I have included your medical records.  The county would not be liable for your condition.  You told us your arm was broken prior to you being incarcerated.  The doctor stated your injury was 8 months or older in August.  Your medical condition is pre-existing.  I had agreed to help you get the surgery but never agreed I was paying the bill.  I am trying to figure out what we will need to do.  You are liable for payment.

Dkt. 41-30, at 1.

Dr. Phillips evaluated Skinner on December 23, 2017.  Dkt. 41, *Motion for Summary Judgment*, at 12, ¶ 28; Dkt. 41-31, *Dr. Phillips' Office Notes, dated December 23, 2017*, at 1.  Dr. Phillips found a lump on the mid-shaft of Skinner's left forearm caused by the healing of his fracture and noted the lump was "very sore to palpate."  Dkt. 41-31, at 1.  He further found Skinner had "good strength" in his forearm, "equal pulses," and that his "neurovascular was intact."  *Id.* Dr. Phillips noted Skinner was not wearing a brace on his arm.  *Id.*  Dr. Phillips' confirmed Skinner's diagnosis as a non-union fracture of the shaft of the left ulna.  *Id.*  He recommended an appointment with the Cherokee Nation Vinita Clinic, noted the Nation would be "responsible for [Skinner's] health issues that occurred before being incarcerated," and indicated his office could schedule an orthopedic consultation for Skinner.  *Id.*

On January 31, 2018, Skinner was transported from the CCJ to the Cherokee Nation Vinita Clinic.  Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 16; Dkt. 41, *Motion for Summary Judgment*, at 12-13, ¶ 29.  During that visit, Skinner complained of arm pain and reported he could

not "get a referral through the Cherokee Nation" because he was incarcerated and the jail refused to pay for the surgery. Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 16; Dkt. 41-32, *Office Clinic Notes, dated January 31, 2018*, at 1. Dr. Gastorf noted Skinner had "chronic pain in [his] left arm" but found his left arm was "neurovascularly intact without deformity." Dkt. 41-32, at 1. Dr. Gastorf advised Skinner that he could not provide a referral "as it will be denied since [Skinner] is currently incarcerated." *Id.*

Skinner commenced the instant action on April 3, 2018, by filing a civil rights complaint against Winfrey and Livingston. Dkt. 1, *Complaint*, at 1. Shortly thereafter, on April 11 and April 25, Skinner filed supplemental pleadings to provide portions of his medical records (Dkt. 4) and supplement the allegations in his complaint (Dkt. 7). Skinner claims Winfrey and Livingston, acting under color of state law, committed "Medical Negligence" by failing "to submit their authority or [j]udgement for medical services" and failing "to schedule [his] operation in time." *Id.* at 2-3. More specifically, Skinner claims Livingston's failure to promptly deliver the August 2017 paperwork approving his operation to the CCJ's medical facility prevented Fleming from making an appointment for his operation. Dkt. 1, *Complaint*, at 3; Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1. According to Skinner, Livingston's failure to submit the paperwork, and Winfrey's failure to ensure that Livingston submitted the paperwork, "caused the approval of the operation to be held up through the Cherokee Nation." Dkt. 1, *Complaint*, at 3; Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1. Skinner further alleges that because Winfrey, Livingston and Fleming "failed to get a surgery appointment made within a reasonable time," the Cherokee Nation "recalled [the] operation payment." Dkt. 1, *Complaint*, at 7. As a result, Skinner believes Craig County should be held liable for damages and punitive damages, and he requests that "the process be forward[ed] to operation." *Id.*

On May 22, 2018, Skinner was released from the CCJ to the custody of the Oklahoma Department of Corrections. Dkt. 41, *Motion for Summary Judgment*, at 13, ¶ 30; Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 9-10.

On preliminary screening of Skinner's complaint and supplemental pleadings, the Court found Skinner's allegations sufficient to state a plausible claim that Winfrey and Livingston, acting under color of state law, deprived Skinner of his Eighth Amendment right to adequate medical care by being deliberately indifferent to his need for an operation to repair his broken arm. Dkt. 11, at 4. After Defendants filed an answer to the complaint, demanding a jury trial, the Court entered an abbreviated scheduling order setting, *inter alia*, deadlines for completing discovery and filing dispositive motions. Dkt. 23, at 1.

The Court subsequently granted Defendants' motion to depose Skinner, *see* Dkts. 24, 25, granted Defendants' motion to compel discovery, *see* Dkts. 26, 28, and granted Defendants' second motion to compel discovery, *see* Dkts. 32, 33. In both orders granting Defendants' motions to compel discovery, the Court advised Skinner that failure to respond to discovery requests could result in sanctions up to and including dismissal of his action. Dkt. 28, at 1; Dkt. 33, at 4. Given the discovery delays, the Court granted Defendants' request to extend the deadlines for completing discovery and filing dispositive motions. Dkt. 33, at 3-4. Defendants deposed Skinner on January 10, 2019. Dkt. 41, *Motion for Summary Judgment*, at 13, ¶ 30.

Defendants filed a motion for summary judgment (Dkt. 41) on May 15, 2019. The next day, Defendants filed a motion for sanctions (Dkt. 42), citing Skinner's "continued and ongoing failure to comply with discovery and his failure to follow this Court's two previous Orders." Dkt. 42, at 1. As previously stated, Skinner did not respond to either motion.

*DISCUSSION*

## I.     Motion for summary judgment (Dkt. 41)

Defendants move for summary judgment, under Fed. R. Civ. P. 56(a), on two grounds. First, they contend they are entitled to judgment as a matter of law because Skinner has not demonstrated that they acted with deliberate indifference to a serious medical need, in violation of the Eighth Amendment.  Dkt. 41, *Motion for Summary Judgment*, at 14-16.  Second, they contend they are entitled to qualified immunity because (1) Skinner has not shown an Eighth Amendment violation occurred and (2) "[t]here is no clearly established law that would have informed the Defendants that their acts or omissions would violate [Skinner's] constitutional rights."  *Id.* at 16-20.

### A.     Summary judgment and qualified immunity framework

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "dispute about a material fact is 'genuine'" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  At the summary-judgment stage, a court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249).  In making this determination, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party."  *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011)).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Consistent with the plain language of Rule 56(a), the movant ultimately bears the burden to show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1326 (10th Cir. 2009) (Holmes, J., concurring).

However, when a defendant moves for summary judgment on the basis that he or she is entitled to qualified immunity, the defendant bears the traditional summary-judgment burden only if the plaintiff first satisfies an initial burden to show "(1) that the defendant committed a constitutional violation and (2) that the right was clearly established." *Id.* at 1325-26. A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), "and may resolve the question by finding either requirement is not met," *Mascorro v. Billings*, 656 F.3d 1198, 1204 (10th Cir. 2011). Generally, in determining whether a plaintiff has satisfied this two-part burden, the court should "adopt" the plaintiff's "version of the facts." *Id.* at 1325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). At the summary-judgment stage though, a "plaintiff's version of the facts must find support in the record." *Id.* Thus, the court may reject plaintiff's version of the facts if it is "'so utterly discredited by the record that no reasonable jury could have believed' it." *Id.* (quoting *Scott*, 550 U.S. at 380).

### B.    Analysis

Skinner claims Defendants violated his constitutional right to adequate medical care by delaying the operation he needed to repair the non-union fracture in his left arm. Dkt. 1, *Complaint*, at 2-3, 7; Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1. Among other things, the Eighth Amendment obligates prison officials to "ensure that inmates receive adequate . . .

12

medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An Eighth Amendment violation

occurs when a prison official acts with "deliberate indifference to [the convicted inmate's] serious

medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The Fourteenth Amendment's Due

Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted

inmates under the Eighth Amendment." *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647

(10th Cir. 2017). Although the parties do not address this point, the record reflects Skinner was a

pretrial detainee, rather than a convicted inmate, for all but the last week he was held at the CCJ.

Specifically, the record shows Skinner was sentenced on May 14, 2018, and transported to

Lexington Correctional Center on May 22, 2018, to serve his sentence in ODOC custody. Dkt.

41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 21. Thus, his deliberate-indifference claim

appears to be governed by the Fourteenth Amendment, not the Eighth Amendment. *Rife*, 854 F.3d

at 647. Regardless, a deliberate-indifference claim relying on either constitutional provision has

both an objective and a subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th

Cir. 2000).

For the reasons that follow, the Court finds Skinner's deliberate-indifference claim fails at

the first prong of the qualified-immunity analysis because he fails to establish a constitutional

violation.

### 1.      Objective component

To satisfy the objective component of a deliberate-indifference claim, a detainee must show

that his "medical need was objectively sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 752 (10th

Cir. 2005). "A medical need is considered sufficiently serious to satisfy the objective prong if the

condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention.'" *Al-Turki v. Robinson*,

762 F.3d 1188, 1192-93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). However, if the detainee alleges a constitutional violation caused by delayed treatment, the detainee must also "show that the delay resulted in substantial harm." *Id.* at 1193 (quoting *Oxendine*, 241 F.3d at 1276). The Tenth Circuit has "held that the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Even accepting Skinner's version of the facts as true, to the extent the record supports those facts, the Court finds Skinner cannot satisfy the objective component of his claim. As previously noted, a non-union fracture describes a bone fracture that failed to heal. *See supra* n.2. The record shows Skinner sustained an injury to his left forearm sometime in mid-2016, several months before he was first booked into the CCJ on January 2, 2017, when he was hit with a baseball bat or chair. Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 7. Skinner did not complain of pain in his left forearm or seek treatment for the left forearm injury until June 21, 2017, several months after he was first incarcerated at the CCJ. Dkt. 41, *Motion for Summary Judgment*, at 7, ¶¶ 3, 5-10; Dkt. 41-10, *Sick Call Request Form, dated June 21, 2017*, at 1. Skinner was promptly transported to the Cherokee Nation Vinita Clinic, on June 29, 2017, and diagnosed with a left ulnar non-union fracture. Dkt. 1, *Complaint*, at 4; Dkt. 41-11, *Office Clinic Notes, dated June 29, 2017*, at 1. Holloway, the nurse practitioner who diagnosed Skinner's fracture, placed his left forearm in a splint and prescribed medication for pain and muscle spasms. Dkt. 41-11, at 3-4. Dr. Gastorf confirmed Skinner's diagnosis on July 12, 2017, and recommended an orthopedic consultation. Dkt. 41-14, *Office Clinic Notes, dated July 12, 2017*, at 1. Two days later, the Hospital referred Skinner to the Center for an orthopedic consultation, noting that Skinner's injury was 6-8 months old at that time. Dkt. 41-15, *Letter from Center to Plaintiff, dated July 25, 2017*, at 1; Dkt. 41-16,

*Referral for Contract Professional Services, dated July 14, 2017*, at 1.

On August 9, 2017, Dr. Chalkin confirmed Skinner's diagnosis and recommended outpatient surgery. Dkt. 41-17, *Surgery Checklist*, at 1. At that point, Skinner's left arm injury was sufficiently serious as it had been diagnosed by a doctor as requiring surgical intervention. *See Al-Turki*, 762 F.3d 1192-93. Within two days of Skinner's consultation with Dr. Chalkin, the Hospital approved the recommended surgery. Dkt. 1, *Complaint*, at 9; Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 16. Sometime after August 22, 2007, Skinner's sister delivered the paperwork approving Skinner's surgery to Livingston at the CCJ. Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1; Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 18; Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 15-16, 21.

To this point, the record shows Defendants responded to Skinner's complaints of left arm pain by seeking appropriate medical care. Skinner's claim that they were deliberately indifferent, however, primarily rests on the delay that occurred after his sister delivered the paperwork to Livingston. Dkt. 1, *Complaint*, at 2-3, 7; Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1. It is undisputed that Skinner's paperwork remained on a desk (possibly Livingston's) in the Craig County Sheriff's Office for about three weeks after his sister delivered it to the CCJ. Dkt. 7, *Plaintiff's Second Supplemental Pleading*, at 1; Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 18. The record also reflects the Defendants' failure to promptly schedule Skinner's operation required him to restart the process of obtaining another orthopedic consultation and a new approval from the Hospital for the operation. Dkt. 41, *Motion for Summary Judgment*, at 10, ¶ 19; Dkt. 41-21, *Craig County Medical Visit Log, dated October 27, 2017*, at 1. Nonetheless, the record does not demonstrate the delay in obtaining the operation caused Skinner "substantial harm." *Oxendine*, 241 F.3d at 1276.

Significantly, the sick call request forms Skinner submitted at the end of October 2017 show that his primary complaint at that time was not pain, much less considerable pain, but rather frustration with the delay in obtaining his operation. *See* Dkt. 41-22, *Sick Call Request Form, dated October 26, 2017,* at 1-2 (emphasizing his diagnosis had been confirmed on multiple occasions and Cherokee Nation had approved operation in August 2017 and seeking explanation for scheduling delay); Dkt. 41-23, *Sick Call Request Form, dated October 27, 2017,* at 1-2 (same). Further, from the end of November 2017 through the end of January 2018, each time Skinner complained of increased pain in his left arm, Fleming either provided Skinner with pain medication or arranged for him to see a doctor. Dkt. 41, *Motion for Summary Judgment*, at 11-13, ¶¶ 23-29.

Notably, on December 23, 2017, Dr. Phillips examined Skinner's arm and found it was "sore" but further found Skinner had good strength in his forearm and hand, his neurovascular was intact, and Skinner was not then wearing a brace. Dkt. 41-31, *Dr. Phillips' Office Notes, dated December 23, 2017*, at 1. Similarly, on January 31, 2018, Dr. Gastorf examined Skinner's arm and noted Skinner reported "chronic pain," but found Skinner's left arm was "neurovascularly intact without deformity." Dkt. 41-32, *Office Clinic Notes, dated January 31, 2018*, at 1. The notes from both visits support that while Skinner experienced some pain as he waited for surgery, he did not experience symptoms either requiring immediate surgical intervention or exposing him to the potential loss of, or loss of the use of, his left forearm. *See Garrett*, 254 F.3d at 950 (reiterating that "substantial harm" may be shown if plaintiff suffers "lifelong handicap, permanent loss, or considerable pain"). Moreover, Skinner's own deposition testimony shows that, as of January 2019, he was still awaiting surgery on his left forearm. Dkt. 41-1, *Plaintiff's Deposition, taken January 10, 2019*, at 22.

On this record, the Court does not find the Defendants' delay in scheduling Skinner's

operation resulted in the substantial harm necessary to establish the objective component of his deliberate-indifference claim.

### 2.     Subjective component

Alternatively, even assuming the record could support a finding that Defendants' delay in scheduling Skinner's operation resulted in substantial harm, Skinner cannot satisfy the subjective component of his deliberate-indifference claim. To satisfy the subjective component, a detainee must show the officials who either denied or delayed adequate medical care "acted or failed to act despite [the officials'] knowledge of a substantial risk of serious harm" to the detainee's health. *Farmer*, 511 U.S. at 842. To make this showing, the detainee must demonstrate the official "kn[ew] of and disregard[ed] an excessive risk" to the detainee's health. *Id.* at 837. "A prison [official] who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if [the official] 'delays or refuses to fulfill that gatekeeper role.'" *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211). Nonetheless, the delay in obtaining medical treatment must result from something more than "mere negligence." *Farmer*, 511 U.S. at 835; *see also id.* at 836 (explaining that deliberate-indifference standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and analogizing standard to criminal recklessness).

Accepting Skinner's version of the facts as true, to the extent the record supports those facts, Skinner has demonstrated, at most, that Defendants may have been negligent in allowing Skinner's paperwork to languish on Livingston's desk for approximately three weeks after Skinner's sister delivered the paperwork to the CCJ. However, the record as a whole demonstrates that Defendants, and non-defendant Fleming, were aware of Skinner's left arm injury and took appropriate measures to ensure that he was provided adequate medical care even if they were

negligent in failing to make prompt arrangements for his operation.

Between June 2017 and August 2017, after he first complained of left arm pain, Skinner was twice transported from the CCJ to the Cherokee Nation Vinita Clinic and once transported to the Center for an orthopedic consultation. Dkt. 1, *Complaint*, at 4; Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 6, 12; Dkt. 41-11, *Office Clinic Notes, dated June 29, 2017*, at 1; Dkt. 41-14, *Office Clinic Notes, dated July 12, 2017*, at 1; Dkt. 41-17, *Surgery Checklist*, at 1. Through these visits, Skinner obtained a diagnosis, received pain medication which was properly administered upon his return to the CCJ, and received a Hospital-approved referral for outpatient surgery. Dkt. 41-11, at 3-4; Dkt. 41-14, at 1; Dkt. 41-17, at 1; Dkt. 41-16, *Referral for Contract Professional Services, dated July 14, 2017*, at 1.

After the discovery of the paperwork from the Hospital approving Skinner's operation, Fleming took prompt action to restart the process of obtaining a new referral and scheduling Skinner's surgery. Dkt. 4, *Plaintiff's First Supplemental Pleading*, at 3; Dkt. 41-21, *Craig County Medical Visit Log, dated October 27, 2017*, at 1. Subsequently, when Skinner either complained about the delay in scheduling his surgery or complained of increased pain, Fleming either immediately provided him with pain medication or scheduled medical appointments for him. Dkt. 41-22, *Sick Call Request Form, dated October 26, 2017,* at 1-2; Dkt. 41-23, *Sick Call Request Form, dated October 27, 2017,* at 1-2; Dkt. 41-24, *Return to Work/School Form, dated October 31, 2017*, at 1; Dkt. 41-25, *Sick Call Request Form, dated November 30, 2017*, at 1; Dkt. 41-26, *Craig County Request Form, dated December 1, 2017*, at 1-2; Dkt. 41-27, *Office Clinic Notes, dated December 6, 2017*, at 1; Dkt. 41-29, *Sick Call Request Form, dated December 15, 2017*, at 1. In addition, when Skinner requested an explanation from Winfrey regarding the delay, Winfrey advised Skinner he was attempting to help Skinner obtain the operation despite Winfrey's position

that Craig County was not financially responsible for the same. Dkt. 41-30, *Craig County Request Form, dated December 19, 2017*, at 1. Relatedly, the notes from Skinner's visits with two different doctors, in December 2017 and January 2018, suggest the continued delay in scheduling his operation resulted from issues regarding who would pay for the surgery, not from Defendants' refusal to ensure Skinner's access to medical care. Dkt. 41-31, *Dr. Phillips' Office Notes, dated December 23, 2017*, at 1; Dkt. 41-32, *Office Clinic Notes, dated January 31, 2018*, at 1.

In short, the record presented does not show that Defendants recklessly disregarded Skinner's need for an operation. Thus, Skinner cannot satisfy the subjective component of his deliberate-indifference claim.

### C.      Conclusion

Based on the foregoing, the Court finds that Skinner has not met his burden to establish either component of his deliberate-indifference claim. As a result, he has not established a constitutional violation and cannot make the first showing necessary to overcome the Defendants' assertion of qualified immunity. For that reason, the Court finds Defendants are entitled to qualified immunity and grants their motion for summary judgment as to Skinner's Fourteenth Amendment deliberate-indifference claim.

## II.      Motion for discovery sanctions (Dkt. 42)

Defendants move for discovery sanctions, under Fed. R. Civ. P. 37, asserting that, as of the date the motion was filed, May 16, 2019, Skinner did not respond to interrogatories "at all," did not submit written responses to requests for production of documents, and had only "submitted a handful of documents [to Defendants] that were previously submitted with the Complaint." Dkt. 42, at 3. In addition, Defendants assert that Skinner also failed to comply with this Court's orders granting Defendants' motions to compel discovery. *Id.* at 4. Based on these transgressions,

Defendants ask the Court "to dismiss [this action] or otherwise sanction" Skinner. *Id.*

Under Fed. R. Civ. P. 37, this Court has authority to impose various sanctions for a party's failure to respond to discovery requests, including dismissal of the party's action. However, for two reasons, the Court declines to impose sanctions. First, this Court previously denied Defendants' request to dismiss this action based on Skinner's failure to comply with Defendants' discovery requests. Dkt. 33, at 2-3. In doing so, the Court reasoned (1) Skinner's claim was "fairly specific" and not overly complex, (2) Skinner had submitted some documents in an attempt to comply with Defendants' discovery requests and this Court's order granting Defendant's first motion to compel discovery, (3) Defendants had not persuaded the Court that they would be "overwhelmed by attempting 'to understand the relevance of the documents'" Skinner provided, and (4) "any prejudice arising from [Skinner's] complained-of actions [would] be sufficiently cured by extending the deadlines for discovery and filing dispositive motions." *Id.* at 3. Second, having just ruled on Defendants' summary judgment motion, the Court finds Skinner's failure to more fully comply with Defendants' discovery requests did not prejudice Defendants' in preparing and presenting a thorough motion for summary judgment. For these reasons, the Court declines to impose sanctions against Skinner and thus denies Defendants' motion for discovery sanctions.

## CONCLUSION

The Court concludes Defendants are entitled to qualified immunity on Skinner's claim that Defendants violated his Fourteenth Amendment right to adequate medical care because the record presented does not demonstrate a constitutional violation. Consequently, the Court grants Defendants' motion for summary judgment. The Court further concludes that the circumstances of this case do not support Defendants' request for discovery sanctions and thus denies their motion for sanctions.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Dkt. 41) is **granted**.

2. Defendants' motion for discovery sanctions (Dkt. 42) is **denied**.

3. This is a final action terminating this case.

4. A separate judgment shall issue herewith.

   **DATED** this 14th day of November 2019.

James H. Payne
United States District Judge
Northern District of Oklahoma